FIRST NATIONAL BANK OF SLEEPY EYE, MINN., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2334.   Promulgated May 25, 1927.

INCOME.—Fees and commissions earned by officers of a national bank, acting as agents for insurance companies in the placing of insurance, are not income of the bank.

*Albert Hauser, Esq.,* for the petitioner.
*W. H. Lawder, Esq.,* for the respondent.

The deficiencies are for the calendar years 1919, 1920, and 1921 and aggregate $2,370.87. They are the result of the Commissioner's adding to the bank's income the fees and commissions earned by officers of the bank, who, acting in their individual capacity represented a number of insurance companies.

### FINDINGS OF FACT.

Prior to August, 1902, C. D. Griffith and W. W. Smith had been partners engaged in the business of private bankers and insurance agents. In August, 1902, they caused to be procured a charter for

the First National Bank of Sleepy Eye, Minn., with an authorized capital of $25,000, of the par value of $100 each. Griffith subscribed for 110 shares, Smith for 110 shares, and three of their employees for 10 shares each. The First National Bank so organized took over and succeeded to the private banking business, and Griffith and Smith retained and continued the insurance agency business. The relative stock ownership of the bank as above shown has continued without change to the present time.

Prior to 1906, the stockholders of the bank agreed that of each dividend declared by the bank a portion thereof should be returned to the bank and, on January 23, 1906, the amount of $4,000 had been so returned. On that date the bank started an account known on its books as a stockholders' reserve account. Continuing the same practice from year to year, as dividends were declared and paid stockholders returned portions of the same to the bank where they were credited to the stockholders' reserve account. On July 15, 1915, the balance in this reserve account was $25,869.53, and on that date $20,000 was by proper corporate action transferred to the bank's regular surplus account. The practice of returning portions of dividends declared was thereafter continued, and on June 30, 1920, the balance in this reserve account was $20,750.

During the calendar year 1918 Griffith and Smith, in their insurance agency business, earned fees and commissions in the amount of $1,943.46, and during the year 1919 such fees and commissions amounted to $2,545.86. The amounts of these fees and commissions were deposited in the bank and certificates of deposit payable to Griffith and Smith were issued therefor. On December 31, 1919, these certificates of deposit amounted to $4,489.32.

In the spring of 1920 the stockholders of the bank determined to increase its capital from $25,000 to $50,000, and by proper corporate action directed that $20,750, the then existing balance in the stockholders' reserve account, was available for the issue of the stock dividend. In order that such stock dividend might be issued for the whole amount of $25,000, Griffith and Smith donated to the said stockholders' reserve account the amount of $4,250 from the total then represented by the certificates of deposit issued to them for insurance fees and commissions to the said stockholders' reserve account, increasing the same to the amount of $25,000, and that amount was then by proper corporate action distributed pro rata to the stockholders of the bank in the form of a stock dividend.

During the calendar year 1920, Griffith and Smith earned fees and commissions in the amount of $2,758.14, and during the year 1921 in the amount of $1,209.24. These amounts were deposited in the bank and certificates of deposit were issued therefor payable to Griffith and Smith.

For each of the years 1919 to 1921, inclusive, the Commissioner added to the bank's gross income the amounts of Griffith's and Smith's certificates of deposit representing insurance fees and commissions.

OPINION.

TRUSSELL: The record of this case is convincing that the First National Bank of Sleepy Eye, Minn., never carried on any insurance agency business, and that it never represented any insurance companies. Prior to the organization of the bank Griffith and Smith had been engaged in the insurance agency business and continued in that business. Individually and personally they were the representatives of insurance companies and the fees and commissions on insurance policies and contracts written were the individual earnings of Griffith and Smith. That they, in 1920, donated a portion of the moneys so earned by them individually to the surplus account of the bank and allowed the three minority stockholders to share in a stock dividend, distributing such reserve, shows only that Griffith and Smith, owning twenty-three twenty-fifths of the stock of the bank were willing and did share with the three minority stockholders two twenty-fifths of a portion of the earnings of their insurance business. We are of the opinion that the moneys earned by Griffith and Smith as insurance agents were erroneously added to the gross income of the bank.

> *The deficiencies may be redetermined in accordance with the foregoing findings of fact and opinion upon 15 days' notice, pursuant to Rule 50, and judgment will be entered accordingly.*